Case number 20-1396 et al. American Federation of Government Employees, AFL-CIO Petitioner v. Federal Labor Relations Authority. Mr. Millage for the petitioners, Mr. Peters for the respondents. Good morning. Good morning, your honors. May it please the court, my name is Matthew Millage and I represent the petitioners in this In Department of Education, the authority jettisoned the standard, the de minimis exception, it has applied for over 35 years to determine an agency's obligation to bargain over changes to the conditions of employment. The substantial impact standard it adopted as a replacement is contrary to the text, structure, and purpose of the statute. Even if it weren't contrary to statute, which it is, the authority's interpretation of the statute in this case is unreasonable and the authority's arguments in support of its decision in Department of Education do not make any sense. The substantial impact standard is fundamentally and impermissibly rewrites the statutory definitions of collective bargaining and conditions of employment which require, respectively, bargaining over matters affecting conditions of employment and working conditions. Counselor, can I just be clear about your bases for reversal? So you say contrary to the statute, you also say unreasonable. Are you also claiming arbitrary and capriciousness that is independent of any statutory analysis? That is correct, Your Honor. We are also arguing that the decision is not supported by sufficient reasons and the reasons provided by the court don't make any sense and are arbitrary and capricious. Thank you. I had a question about the parallel law and obviously my primary question is going to be for Mr. Peters, but one of the rationales behind the authority's decision here is that the labor board under its has used the higher threshold that the authority has adopted here and nobody really talks about the text of the National Labor Relations Act and where that higher threshold comes from and whether there's any parallel language here in the statute governing the authority's cases. Can you speak to that? I know the peerless food board decision is cited as the basis for the requirement that there be a material, substantial, and significant change in working conditions before the bargaining obligation attaches, but I'm not sure I understand how that relates to or where that comes from in the text of the National Labor Relations Act. And again, maybe this is not a question for you, but if you had any ability to cast light on that, I'd be interested. So to my knowledge, Your Honor, there's no statutory language that supports the standard that the NLRB uses. However, in this parallels or similarities between the statute in this case and the National Labor Relations Act, it's important to consider not only the text, but the text, the structure, the purpose, and the legislative history of those acts. I understand that. And I appreciate your arguments about the differences and the differences in the policy and the structure and the narrowness of on text in this case and say the text disallows what the authority did here. Is that likely to have an impact on labor board cases? Because as far as I know, we've never blessed the labor board requirement of a material, substantial, and significant effect. Well, Your Honor, I can't answer the question of whether this court has blessed or sanctioned the NLRB's interpretation of their statute. What I can say is that in this case, or in a case interpreting the NLRA, the court would not be limited to just the text. They'd have to look at the text and the structure, as I said before. And for example, here on page 10, under the statute, the scope of bargaining is limited by the statute by explicit statutory exceptions that do not exist under the NLRA. And so for federal employees bargaining under the statute, they cannot bargain about matters covered by federal law. They cannot bargain about the classification of positions. They have limited bargaining rights when it comes to the exercise by agencies of management rights. And so all of that has to be considered when determining what standard is appropriate under a particular act. And so... Does that limit limitation or the narrow scope of bargaining rights, does that help you or hurt you? It helps us, Your Honor, because Congress was quite clear that, and as this court explained in Library of Congress, the scope of bargaining should be broadly construed based on congressional intent, except for the explicit statutory exceptions. Other than those exceptions, the duty to bargain should be broad, as this court said in Library of Congress. And as the legislative history shows, all conditions of employment are subject to bargaining. But didn't we also hold in ALJ that, you know, it's not just exactly what is written into the statute? There's been a recognized exception, the de minimis exception. So haven't you overstated the extent to which we rely on purely what is there in the statute? Respectfully, Your Honor, I don't agree with that interpretation of the case. What I would say is that the de minimis exception is entirely consistent with the statutory text. And in fact, there's just another way of stating the statutory text. It's not at all interpretive. So what ALJ said was that the text requires there to be an appreciable effect on conditions of employment or working conditions. And petitioners would suggest that that's just simply another way of looking at the de minimis exception. Under the de minimis exception, matters must have an effect on conditions of employment or working conditions in order to be subject to the duty to bargain. Same with the appreciable effect test that was applied in AALJ and AFGEVFLRA, the other case we had. But getting back to Judge Pillard's question about the NLRA, is there language in that statute that is sufficiently similar to this one that if we say we can't have the higher test in this case, we can't have the NLRA? Well, Your Honor, I would say that whatever the decision in this case, a decision in this case could be used in any future litigation involving the NLRB. Could this decision have an impact? Of course, cases can always have an impact. However, the structure of the NLRA is different. And one substantial difference between the statute and NLRA is federal employees cannot engage in economic action in support of their collective bargaining rights. Private employees can. They can engage in economic action to secure contracts, to secure collective bargaining agreements. Federal employees cannot. But that again, as with Judge Jackson's response to your last question about the narrowness of bargaining rights, it's not clear whether that helps or hurts. I mean, Congress has been more willing to restrict bargaining rights in the federal sector than the private sector in certain ways, with an understanding that in certain ways, governmental employers differ. And, you know, I hear you partly arguing, well, then what's left should be given wide berth. And maybe that's an oversimplification that doesn't do your argument justice. But, you know, that there should be breathing room for what's left. And it's just not entirely clear to me that that follows. So I see that my time is up. I would like to answer this question. Well, then, yeah, answer that question. And I want to take you in a different direction. Yes. So the Congress struck a different balance under the statute and under the NLRA. And it's important that this court honor the balance that was struck. Yes, Congress has placed additional restrictions on bargaining for federal employees. Therefore, it is important, in fact, critical to honor the rights they gave to federal employees by stating that employees are entitled to bargain over all matters affecting conditions of employment, or all matters affecting working conditions. Because of the restrictions that were put in place, it's even more important to honor the words in the statute. Mr. Millich, you answered Judge Jackson's very first question by saying that you were also raising an arbitrary and capricious challenge. And am I right that if you're correct about that challenge, we don't have to wrestle with any of these statutory questions? Is that your position? Yes, Your Honor, if this court... Well, do you want to take your in your last minute, do you want to say something to us about your APA claim? Maybe the claim has been misunderstood, but the so APA and Chevron merge, but... I didn't mean APA, I meant your claim. I thought what you said to Judge Jackson, and this is the way I read your brief, is that you make two arguments here. One, that this violates the statute, but independently, without regard to whether it does or not, it's arbitrary and capricious, correct? That is correct, Your Honor. And can we consider the arbitrary and capricious issue by itself? Will that resolve the case? Suppose you're right. Yes, Your Honor. If the court were to find that the authority's decision was not well supported, was not supported by reasonable and coherent reasons, that would be sufficient grounds to overturn and remand. So I yield my time for rebuttal, or I'd like to reserve the rest of my time for rebuttal. Sorry, with me, my colleagues have no further questions. Okay. Thank you, Your Honors. We'll hear from the authority. Mr. Peters, I think we're ready to hear from you. Looks as though he's frozen. It does look that way. Can you reach him, ma'am? Is there a way to talk to him? I am calling him right now, Judge. Okay, thanks. You're welcome, Judge. I thought it was me who was having internet problems today. For once, no. Hi, sorry about that. May it please the court, Noah Peters for the Federal Labor Relations Authority. So I want to pick up a little bit on the step two argument that we left off on. So there were basically four bases in their brief for saying that this policy statement had failed step two. So they said, number one, that the authority's observation that it had never given a reasoned impact was wrong. In fact, it had. I submit to you that we have the better of that argument. I think that the cases from the 1980s, the two cases where the authority switched or kind of transitioned into the more than de minimis standard, didn't give any sort of clear explanation for why. Are you referring to the executive order? Right. I'm referring to the decisions from the 1980s, the first point of contention that they bring up under their step two argument, which is that the authority in the 1980s had in fact provided a reasoned explanation for adopting de minimis as the standard, more than de minimis as the standard. And yeah. Mr. Peters, let me ask you this question about that point. Let's assume you're right. That the reason given 20, 35 years ago wasn't adequate. This is just an assumption. I'm not sure what difference that makes here because the agency still needs to give a reasoned decision for adopting the rule that it adopted. So don't we still have to look at the other three reasons? You said, they said it's inconsistent with the purposes of statute, it's more lenient than the test applied by the board, and it's created unpredictability. So the question is, are those three reasons, those three rationales reasonable? Do they make sense? We still have to decide that, right? Yeah. And, and I think that. Okay, right. Okay, got it. Yeah, no, I'm just addressing their, their, their argument. But I think that this, the authority's decision is well reasoned and is reasonable. And I think the authority when it recites the backdrop of the first off the precedent under the executive order as having been, as having been substantial impact. I think that that is entitled to considerable weight. And also the fact that it noted that the NLRB has also adopted this test. What it's, what it's saying is that basically there's 50 years plus of the NLRB using substantial impact. There's decade under, of the authority using substantial impact. A decade of the authority and then under the executive order also using substantial impact. And then there's, there's a switch in the mid 1980s. This is what the authority recounts. And since then, the authority reviewing its own case law, which I think the authority is entitled to a great degree of deference when it reviews, when an agency reviews its own case law. Did you, did, did, did the authority make that point? I saw in your brief, you made that point. That is, that's 50 years of, that's 50 years of board authority to rule on. Did the authority say that? I think the, the authority certainly cited board precedent and said that, you know, Did it make this point? I know it's cited board precedent, but did it make this point that you've got 50 years of board precedent to rely on? I mean, maybe I missed it, but I don't remember reading it in the decision. Right. Well, I think that the, the, when it contrasts its own precedent in book 14, it reviews its own precedent and it says our precedent is inconsistent. It, it. That's not the same thing as saying 50 years of board. Right. Right. But I think that there's, it does note that the, in footnote 30, it notes that the authority frequently looks to board precedent on a variety of issues. And that's in footnote 30 of its decision. And so I think that there is, there is the reason given, or one of the reasons is that we should look to board precedent, just in general, and in this area, there's no reason not to. And I think that when. Can I take you down a slightly different track? So it appears that the authority is, I think one of the reasons that they put forward is the problems with the administrability of the de minimis exception that they say things like it's unpredictable. It's been problematic. That's why we're looking at this. But it appears to assume that the substantial impact standard is going to be more administrable, but it's going to be more predictable. And I don't really see any evidence of that and anything that they've cited. So can you help me to understand? And I would say, conceptually, it seems that both of those standards might be subject to the same kinds of predictability problems. So what is it about substantial impact that the authority thinks will make it easier to administer than de minimis? Well, I think that the, the biggest thing is that I think the, the, what the authority noted was that it is, it's incongruous for the test to be framed in terms of the duty to bargain over things that are barely more than trivial, right? The more than de minimis test emphasizes that we need to go right up to the line of triviality in our test. Isn't that easier to, that seems to me to be much easier to administer than just as a takes us further down the road. So fine. It's not just right over the line. It's something that has a substantial impact that seems to me to conjure up all sorts of questions. What is a substantial impact as opposed to something else, right? Is, is just one of them. So I'm curious as to, because I didn't really see it in the opinion as to why the authority thinks that the test that it is adopting is better. And I think that's the kind of thing that they need to say and have some evidence of in order to make this kind of shift. Well, I think that the, whether the more, whether the substantial would yield a meaningful and determinative standard would yield more predictable and consistent results is in kind of the heartland of predictive judgments that an agency will make, right? They make them based on something. And so what I guess I'm trying to understand is what evidence do they have that supports this prediction? Well, I think a big factor is the NLRB precedent, which is cited extensively. And as, as the authority notes, we look to the NLRBs precedent on a variety of issues. And I think that's a very important data point. I think the emphasis that this was the standard that was applied initially under the authority. Let me, let me, let me, I'm sorry. Let me also point out one thing that I think sort of led me down this track, which is that the agency or the authority cites particular examples and they seem to undercut this notion that something is going to be more predictable because, you know, they go both ways. So I'm trying to understand. Right. And I think the, I think what you brought up is a big data point to the authority reviewed its own case law and it found that it's the more than de minimis test had yielded inconsistent results. So I'm looking to, I think all of that logic to a reasonable point would say, well, maybe we should adopt the NLRBs precedent, you know, that maybe it's not a, it's not a slam dunk kind of demonstration. But of course we're operating here in the area of prediction about future events, about how the results that will be reached in future cases by ALJs and arbitrators and the authority applying this standard. So, but I think the, the authority definitely gave reasons for why it felt that this was a better test. I think that they are ones that a reasonable person would find convincing. They thought it was a better test. Can you just summarize quickly? They thought it was a better test, better than de minimis. I see the reasons why they don't like de minimis, but what I don't know is why this one is any better. So can you hold me to that? Yes. I think that there's, first off they situated with it, which is, this is the test that we initially applied for the first 10 years of our existence. This is the test that the NLRB applies. And we look to the NLRB's precedent on a wide variety of issues. And, and then they look to the test itself, to the formulation, and they say that it's incongruous to, for the test to emphasize that we need to go right up to the line of triviality that, that you know, as they say, bargaining over matters that are just barely more than trivial leads the minds of ALJs and arbitrators in the wrong direction, because the test shouldn't be emphasizing the need to bargain over things. Right. But that's, that's sort of slipping back into why de minimis is wrong. And so the change should be material, significant, should draw, it should be something that's of interest to, that's meaningful to employees. The authority emphasizes several times that we need to emphasize meaningful bilateral negotiations that are actually worth the time of agencies and unions, as they note that the opinion of member McGinnis talking about that decisions are made daily by every level of management. And if bargaining were required on each and every decision, government would grind to a halt. So, but that has not happened. Right. I mean, the interesting and curious thing about the examples that they give in the opinion is that even as they say that de minimis is going to be, it has been a nightmare and everything is being bargained as a result of de minimis, the examples that they give show that that's not so. There are some examples in which de minimis does not lead to bargaining. Right. I know they offered those in terms of predictability, but they seem to undercut the point that if we have a de minimis test or if that's what the statute requires, then bargaining will always happen and we'll never be able to function. I think though that what the authority was emphasizing was the unpredictability and the fact that some decisions had found that very, very minor things were bargainable and the emphases had been different. So, what the authority is saying is that when the test is so unpredictable, it's not going to be worthwhile for agencies to try to challenge bargainability when the case law is all over the place. But I do think that within the decisions that the authority cited, there are very significant differences, even not just in the results, but also the language and the emphases that are used. In GSA Region 9, the authority seems to be suggesting that office moves are generally not- Can I ask you, I'm sorry, I don't know if you can read the example, but what about the NLRB scenario and this one? I mean, Judge Pillard points out that we have different statutes. The fact that the NLRB has imported this test into their scheme doesn't necessarily mean that it's appropriate for this scheme. And in fact, the petitioners point out substantial differences. So, what's the best argument as to why that is a reasoned analysis? Right, well, the best argument is that the statute copies almost verbatim the language about the duty to bargain from the NLRA and from the old executive order, both of which had been interpreted as creating a substantial impact test, and it very consciously reused the language. Then it took out of a belt and suspenders approach, which is that even in areas that we're not aware of, case law and precedent under the old executive order applies unless it's superseded by specific provisions of the statute. In the FLRA context, don't we have specific provisions that lay out exceptions and we don't have that in the private bargaining world? No, I mean, I think the language, the basic obligation is similar, but the statute contains several more indications. It emphasizes on several occasions that bargaining should be about conditions of employment affecting such employees. Adversely affecting such employees includes references to effects that are not present in the NLRA. It also includes a very broad provision that the NLRA does not have, which is that the provisions of this chapter should be interpreted in a manner that are consistent with effective and efficient government. The NLRA has no similar language to that. Well, our court has held in Library of Congress that we understand the statute to say that collective bargaining in the public sector is in the public interest. It is consistent with and supportive of effective government, contrary to the argument that you make in your brief. Well, the AALJ decision recognized the trade-off, as it said, efficiency in government can hardly be thought to require bargaining over in trivial matters. A trivial matter, but that's an argument distinctive. And I think Judge Jackson was probing you on that. That's an argument distinctive to the de minimis exception, which doesn't even need a textual ambiguity or any kind of hook, whereas what you're arguing for, I'm just having a hard time understanding how it squares with the text of the statute. And so I had the same question for you along those lines that I had for Mr. Milligen. Perhaps it's more appropriate for you. Do you understand how the board has squared its requirement that a unilateral change be material, substantial, and significant before it raises the duty to bargain, given that the language of both acts of the National Labor Relations Act, like your statute, doesn't refer to any such threshold? Where does that come from? And how does that square with the National Labor Relations Act? It comes from the NLRB's case. So it actually comes from, there is a Supreme Court decision that we cite called NLRB versus Katz, 1962, which talks about a substantial departure from past practice. But more as a descriptive matter, that it was a substantial departure and therefore was a violation, not that a substantial departure is needed and here was an insubstantial one. So it doesn't really announce it as a standard. Well, I think ultimately the substantial impact standard comes from the same place as the de minimis standard, which is that the agencies have the discretion to draw the line of trivial matters that are not fit for their, to consume time and resources. And it's basically, but the manner of that line drawing is something that we leave to agencies. So if agencies want, and this is, there's a case from the DC circuit that articulates this as well. Peter, this is what really, really confuses me about your argument, because it feels like you're trying to have it both ways in a certain way. You suggest that substantial impact comes from the same place as de minimis. It's really not that different. Agencies are making these kinds of lines and they're basically a tantamount to just exercising the same authority to make sure that things that are only important are subject to bargaining. But on the one hand, but then on the other hand, you say, no, no, no. Substantial impact is really important. It's doing work that's different than de minimis, which is why we need to make this change. It's going to be more predictable. So which is it? I mean, is it, is it basically the same as de minimis? And so therefore we don't have to worry about it transgressing the statute or being outside of the agency's authority in this context, or is it something new and important and different that the agency is importing? Well, it's not something new. It's something that has been around, you know, in the NLRB context for 50 years. I understand, but is it different from de minimis or not? It comes from this, it's, it's a different way of articulating, of trying to suss out, of trying to do the same thing, which de minimis had tried to do and failed, which was to distinguish trivial matters from matters that really should be, that really are within the duty to bargain. And it comes from pretty much ultimately, if you're, if you're tracing it back to the NLRB, it comes from the same place, which is the, the duty to the ability of agencies to draw the line about what matters are trivial, what matters are not. And so it's your position that substantial impact does the work of identifying what matters are not trivial, that it's the same, which is what de minimis was supposed to be doing, but you said didn't do. Yeah, so the, the authority looked at its case law and said it had ceased to effectively perform its function of winnowing out matters that are too trivial to bargain. And also the fact is that, you know, this was used for, before the articulation of, before the adoption of the statute, which is something that the authority notes. It was used by the NLRB and under the executive order. Can I just, can I ask you, so you, do you reject the proposition that there is daylight between de minimis and the substantial impact, that there's some category of cases or situations or changes, management changes that will be more than de minimis, but less than substantially impact. You don't think there's any room for that? No, I, I think that we have to see how it, I mean, obviously it hasn't been applied in, in specific cases. Wait a minute. You said there's 50 years of precedent on it. It was applied under the executive order. You have to have one position. So I do. I mean, I think that it's, it's certainly a more meaningful and determinative standard. I think, I don't know that the, as far as specific case outcomes, that would be one way under this test and another way. I think that there are some or else right. The authority wouldn't have adopted it. And I, I do think that it's, that it's clear that, you know, that there, there is under the federal sector. I think there's been a broader appetite, a more robust appetite to bargain over things that do seem very trivial as, as many of the, as many of the examples cited by the authority in footnote 14, such as rearranging seating within an office would seem to suggest. But so, yeah, there is certainly daylight between the two standards. But I don't know, but in terms of what they're trying to get at, I think the de minimis test was trying to get at the same thing that the substantial impact test was. And if you read the decisions from the 1980s, they're citing substantial impact case law and saying, we should use this case law because substantial impact is a, is a, you know, known quantity, but they're not explaining why they're moving to a de minimis standard. Can I ask you, Mr. Peters, I'm sorry to interrupt, but we've kept you a long time already. Can you explain whether you think the context of impact and implementation bargaining in which I gather the substantial impact standard first was employed differs at all from the context of duty to bargain in the first instance, does the board treat those two contexts differently, have a different threshold? Does the authority and does the, does, does that help at all to explain the evolution of the case law and either under either statute? Um, I, I think that the, the impact and implementation bargaining, uh, is, is a, is sort of a federal SEC is more of a federal sector category. Um, I think the, the, uh, bureau of hearing and, uh, appeals case, the one that was, uh, office hearing appeals, Charleston, South Carolina, uh, which is cited in the decision and in our brief, uh, I think that does a good job tracing the history of, of substantial impact, um, and why it makes sense to apply it to substantively bargainable matters versus impact and implementation, uh, bargaining. But I don't think that I think that in light of the authority's decision, uh, lengthy discussion that there's no real reason why to confine it to I and I bargaining, um, in office of hearing and appeals. I don't know that, that we get very far by talking about the differences between substantively bargainable and I, and I, in terms of talking about the substantial impact test. Uh, okay. Thank you. Thank you. Yeah. Um, and how much time did Mr. Milich have left? Two minutes and 30 seconds. Okay. Go ahead, Mr. Milich. Thank you, Your Honor. If I may, a couple of quick points. First, I would just like to say impact and implementation in the federal sector is a unique beast because it stems entirely from 7106, the interplay between 7106A, management rights, and 7106B, appropriate arrangements and negotiations over procedures. Going back to the general argument, uh, the authority's decision should be overturned because it is not supported by reasonable and coherent reasons. The authority says this will lead to more certainty or more predictability, but as Judge Jackson pointed out, that's just simply not the case here. The de minimis test or the substantial impact test require a case-by-case analysis of the facts in that case and will vary because the facts in one worksite will be different than the facts in another worksite. And so you will get differing results based on the situation on the ground in each case. How one change may impact one worksite will be different than how it impacts a different worksite. Milich, can I ask you a different question in the quick time that you have left? Yes, Your Honor. The authority pointed out at one point, I believe it was in the briefs, that at the time that the statute was enacted, the governing practice was to employ the substantial impact threshold by virtue of the executive order. So what I'm wondering is why that wouldn't cast Congress's apparent silence on the issue in a different light. If Congress enacted this statute against the backdrop of a world in which substantial impact was being employed and didn't say anything about it, why shouldn't we assume that Congress intended for that to be the governing standard? Well, Your Honor, I wouldn't say that's accurate. Congress did say something when they said that you were required to bargain over all matters affecting conditions of employment. Congress did not say you were required to bargain over all matters substantially affecting or substantially impacting. They said all matters affecting conditions of employment, period. Your step one, Chevron, argument is that this is unambiguous and unambiguously in your favor. That is correct, Your Honor. I see. In addition, Congress passed the statute because they decided the executive order wasn't working. There was a reason the statute was passed because they were moving past the executive order system, which you can see discussion of in Bureau of Alcohol and Tobacco and Firearm and Library of Congress. And I see I've gone over my time. Unless there are no further questions. Thank you, Mr. Miller. The case is submitted.
judges: Tatel, Pillard, Jackson